Baldwin, J.
The ground of this motion is the alleged misconduct and laches of the plaintiff in error, as disclosed by the record of the appellate proceedings in this Court, and the record of the injunction suit prosecuted by him in the Court below, to be relieved against the judgment now sought to be reversed.
*234 It appears that the judgment was recovered by Reid and wife, the defendants in error, against Ross the plaintiff in error, on the 13th of September 1838, in an action of debt brought by the former against the latter. Ross filed his bill in equity for a discovery and relief against the judgment, and on the 20th of September 1838 obtained an injunction order restraining all proceedings upon the judgment until the further order of the Court; which injunction was granted upon the usual condition of giving bond and security to pay and satisfy the judgment, if the injunction should be dissolved, and of filing a release of all errors in the judgment and proceedings at law. The bond and security was given the 29th of the same month, but no release of errors was ever filed. The injunction suit however, proceeded in like manuer as if the release of errors required had been filed, and was heard on the 27th of May 1848, when a decree was rendered by which the injunction was dissolved and the bill dismissed. The fair presumption is, that during the whole period of its pendency the defendants therein were ignorant that the condition of the injunction order had not been fully complied with, inasmuch as they made no effort to sue out process of execution upon their judgment, nor to exact the filing of a release of errors.
It may be that the failure of Ross to give the release of errors was in the first instance from inadvertence ; but pending the injunction cause, to wit, on the 27th of June 1842, he applied to and obtained from a Judge of this Court a vacation order awarding a writ of supersedeas to the judgment at law upon the usual terms. At that time he could not have been ignorant that he had not given a release of errors, for he must have known that if he had the attempt to reverse the judgment in the appellate- Court was utterly hopeless.
After obtaining from the Judge the order for a writ of supersedeas, it was incumbent upon Ross to return *235 it with the record upon which it was obtained, to the office of the appellate Court; and our statute law prescribed that if the party praying such writ of supersedeas should not deliver the record with the order allowing the same, within thirty days thereafter to the clerk of the Court of appeals, the same should not be received thereafter, unless good cause should be shewn to the contrary ; and that after such dismission no appeal, writ of error or supersedeas should be allowed. Supp. Rev. Code, p. 155, § 53. Ross however did not return the record with the Judge’s order endorsed, within the time required by law, nor attempt to shew cause against the dismission of the case until the 27th of April 1843, a period of ten months, when on his motion, and for reasons appearing to the Court, the writ of supersedeas awarded by the Judge in vacation was directed to issue on bond and security being given. This order of the Court was made ex parte, no notice being required by the act of assembly or the rules of the Court; and it is known that such orders are usually made without evidence, and upon the mere suggestion of some excuse for the delay.
I cannot doubt that if it had been made known to the Judge in vacation, when the petition for the writ of supersedeas was presented, that Ross was then prosecuting an injunction bill to be relieved against the judgment, that he would not have awarded the writ, whether upon the supposition that the condition of the injunction order requiring a release of errors had, or had not been performed: if the former he would have seen that the appellate proceedings was idle; if the latter, that an abuse was attempted which would have induced him to require performance of the condition before acting upon the subject. And if the same fact had been made known to this Court when the petitioner applied for leave to perfect his appellate proceeding, his motion would doubtless have been overruled and his case dis *236 missed, or he would at least have been laid under the condition of dismissing his bill of injunction.
Under this order of the Court, of the 27th of April 184.3, it seems that a writ of supersedeas issued, but what became of it does not appear. It is certain that the condition of giving bond and security was never complied with. If it had been, then the endorsement of the fact by the clerk of the Court below upon the writ would have authorized its service upon the adverse parties, and such service would have led them to the enquiry whether a release of errors had been given, and upon ascertaining that it had not, to the proper course of proceeding in order to exact it.
Ross however on the 29th of February 1848, while the injunction suit was still pending, and more than five years after the order of the 27th of April 1843, obtained on his ex parte motion an order of this Court, suggesting that the writ of supersedeas had not been returned executed, and awarding a new writ. But the new writ of supersedeas was not sued out until the 14th of August 1848, after the decree had been rendered dissolving his injunctien and dismissing his bill. And upon the 17th of October following, upon his petition, without notice, stating his inability to give bond and security in double the amount of the judgment, he obtained an order of this Court, founded upon the act of 1825, Supp. Rev. Code, p. 127, setting aside the order allowing him the writ of supersedeas, and awarding a writ of error, upon giving bond and security for the costs thereof only. Although by the literal terms of this last order, it would seem that the appellate cause was dismissed and a new one instituted, the inevitable result of which would be to bar the latter by the operation of the statute of limitations; yet I think a fair and reasonable construction of the order is that it was intended, in conformity with the prayer of the petition, to discharge the supersedeas of the appellate *237 proceeding, and allow it as a mere writ of error to be 1 1 continued and renewed.
It thus appears that Ross did not perfect his appellate proceeding, so as to enable him to ask to be heard thereupon in this Court, until since the order of the 17th of October 1848, (made more than ten years after the date of the judgment,) allowing him to renew his writ of error, on giving security for costs only: And the question is whether, under the circumstances of the case, he ought to be now heard, for the purpose of reversing the judgment for some error of law therein, though he has exhausted in another forum the remedy he prosecuted there upon the principles of equity. And if he ought not to be heard, then it follows that the writ of error must be discharged, and the parties dismissed from this Court.
It is true that by the construction which has been given to our statute law, (as it stood prior to the new Code, and which was thereby adopted,) a writ of error or supersedeas was not barred by the statute of limitations, though bond and security was not given within five years from the date of the judgment, if the order allowing the writ, or even the application therefor, was made within that time. Still, however, the appellate proceeding, though considered as pending, was not made effectual for the purpose of staying execution of the judgment, or of being brought to a hearing by the plaintiff in error, until the bond and security was given. And it cannot be doubted that it is the duty of the party to perfect the same within a reasonable time, and if he should fail to do so when required by the Court, that his appellate proceeding should be dismissed. And it is equally clear that when the party has been guilty of great laches, the Court may refuse him its aid, or its leave, to perfect his appellate proceeding and discontinue the same. Anderson v. Lively, 6 Leigh 77; Williamson v. Gayle, 4 Graft. 180.
*238 Whether if this were a case of mere laches, that would appear to have been sufficient to call for the dismissal of the writ of error, I deem it unnecessary to consider. This it seems to me is not a case of mere laches, on the part of the plaintiff in error, but of laches wilful, deliberate and repeated; and moreover of misconduct in the instituting and prosecuting of a wrongful appellate proceeding, for the purpose of securing an undue advantage arising solely out of his own failure of duty, a duty which if it had been performed would have excluded him inevitably from the appellate forum.
In the first place, it was the duty of Ross, if his omission to perform one of the conditions upon which he obtained the injunction to the judgment was inadvertent, to have supplied the defect, so soon as he discovered it, by executing and depositing with the proper officer a release of all errors at law : And if he did not choose to do this, to have dismissed his injunction bill, or to have disclosed the omission to the Court or the adverse party, which would have led to the exaction of the release of errors. Instead of taking this obvious course, he still pursues his remedy in equity, and availing himself at the same time of his knowledge that the errors at law if any had not been formally released, he obtains the vacation order of June 1842, for a writ of supersedeas, nearly three years after the date of the judgment; and thus secures himself in the appellate forum from the bar by further lapse of time of the statute of limitations. It was not his interest, however, for the reason already suggested, to perform the condition of that order, nor of the order of this Court of April 1843, founded upon his not having returned the record within the time prescribed by law. But it was his interest shortly before the expiration of five years from the order last mentioned, to guard against the imputation of laches, by procuring the order of February 1848, suggesting that the writ of supersedeas thereto *239 fore issued had not been returned executed; and after the decree in the Circuit court of May 1848, to sue out his writ of supersedeas of August 1848, to prevent the execution of the judgment, provided he could give the required security; and failing in that, to obtain the order of October 1848, dispensing with security except for costs. These several steps, it will be seen, so far from repelling, confirm strongly the imputation of laches ; but are more important as serving to shew that being ex parte, and so furnishing no notice to the defendants in error, most of them were, if not designed, at least calculated, to place the appellate proceeding in a condition to be rendered available, if the bill of injunction should fail.
It is true that Reid might by much vigilance have discovered the failure of Ross to give the release of errors, but it is plain that he did not discover it, and that Ross availed himself of his adversary’s ignorance to pursue the two incompatible remedies at the same time; which ignorance on the part of Reid, and his consequent belief that his hands were tied by the injunction order, rendered it impracticable for him to enforce his judgment by process of execution.
I need not, I think, step aside to enquire by what analogies this Court may proceed upon motion, or without, to protect its jurisdiction and process from abuse, instead of sending them to the guardianship of a different forum; and in the case before us, it seems to me, the shortest and most effectual remedy compatible with a due hearing and consideration is the best.
Judges Allen and Daniel concurred in the opinion of Baldwin, J.
The following is the order entered in the cause :
This Court having maturely considered the motion of the surviving defendant James Reid, by counsel, and *240 the evidence submitted in its support; and having also maturely considered the cause shewn against the said motion, and the evidence relied on in support of that cause by John S. Caldwell, as committee administrator Plaintiff, James Ross, who is now deceased, and whose said administrator appeared by counsel to shew cause as aforesaid; and upon such consideration, as well as upon consideration of the arguments of counsel who were fully heard upon both sides, this Court being of opinion that the said Caldwell, as committee administrator as aforesaid, has not shewn good cause against the said motion, but that the said James Reid, surviving defendant as aforesaid, has shewn good cause in its support; thereupon doth grant the said motion of the said surviving defendant, James Reid, and doth order that the writ of error heretofore allowed in this case to the said James Ross, who is now deceased, be abated and dismissed, and that the said Caldwell, as committee administrator as aforesaid, be barred and precluded forever from suing out any writ of sci. fa., or other process to revive the same, or from, in any way whatsoever, farther prosecuting the said writ of error: And it is farther considered and adjudged by this Court, that the said Caldwell, as committee administrator as aforesaid, out of any assets of the said James Ross deceased, in the said administrator’s hands to be administered, do pay unto the said James Reid, surviving defendant as aforesaid, his costs, by him about his motion in this behalf expended.